UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN THE MATTER OF:

PERCY SQUIRE (#0022010),

       RESPONDENT                     Case No.: 1:11-MC-053-GLF

**OPINION AND ORDER**

On November 3, 2011, the Supreme Court of Ohio decided *Disciplinary Counsel v. Squire*, 130 Ohio St. 3d 368, 2011-Ohio-5578, 958 N.E.2d 914, in which it ordered Respondent Percy Squire to be suspended indefinitely from the practice of law in the state of Ohio. In accordance with Rule II of the Model Federal Rules of Disciplinary Enforcement, adopted by this Court on February 1, 1979, this Court issued an Order requiring Respondent to show cause why the Court should not impose the identical discipline imposed by the Supreme Court of Ohio. (ECF Nos. 1, 6.) For the reasons that follow, this Court likewise suspends Respondent indefinitely from the practice of law in this Court.

**I. Background**

In February 2009, the Ohio Disciplinary Counsel charged Respondent with misconduct related to the mishandling of a $25,000 fee for representing two clients in various legal matters. *Disciplinary Counsel v. Squire*, at ¶¶ 2, 6. Later, the Disciplinary Counsel charged Respondent with a five-count second amended complaint that alleged multiple violations of the Ohio Rules of Professional Conduct. *Id.* at ¶ 2. The added counts alleged that Respondent misappropriated and mishandled client funds, failed to maintain adequate records documenting client funds entrusted to him, and engaged in business deals with clients without advising them of the

1

conflicts of interest attendant to such relationships. *Id.*

Pursuant to the Ohio disciplinary rules, the matter was tried to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio. *Id.* at ¶ 3.  Before the hearing on the Disciplinary Counsel's complaint, Respondent moved to dismiss the disciplinary proceedings or, in the alternative, to disqualify Disciplinary Counsel Jonathan Coughlan and his office from prosecuting the case. (*See* Resp. to Order to Show Cause, ECF No. 7, Exs. A and B.)  Respondent argued that there was a conflict of interest inherent in Coughlan's participation because of Respondent's representation of his wife, former Judge Carole Squire, in disciplinary proceedings brought against her by Coughlan.  *See generally In re Squire*, 617 F.3d 461 (6th Cir. 2010); *Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006); *Disciplinary Counsel v. Squire*, 116 Ohio St. 3d 110, 2007-Ohio-5588, 876 N.E. 2d 933.  The panel denied Respondent's motion.

After a hearing in May 2010, the panel found Respondent to have committed 12 violations of the Ohio Rules of Professional Conduct, but also recommended that 13 alleged violations be dismissed for insufficient evidence.  *Id.*  The full Board adopted the panel's report and filed its final report with the Supreme Court of Ohio on November 22, 2010.  (*See* ECF No. 1-1.)

The Disciplinary Counsel objected to the Board's final report under Rule V, Section 8 of the Supreme Court of Ohio Rules for the Government of the Bar.  *Id.* at ¶ 4.  The Disciplinary Counsel objected to the Board's findings and sanction on Count 3, which alleged, in part, misconduct arising out of Respondent's handling of funds for Respondent's client, Mark D. Lay. *Id.*  Respondent did not file his own objections to the Board's final report.  But in his Answer

Brief to the objections of the Disciplinary Counsel, he again argued that Coughlan and his office should be disqualified due to Coughlan's conflict of interest. Respondent attached to his Answer Brief in the Ohio Supreme Court the same motion for disqualification that he had filed with the Board of Commissioners on Grievances and Discipline.

The principal issue disputed before the Ohio Supreme Court revolved around Respondent's representation of Mr. Lay. *Id.* at ¶ 23. Before Lay was convicted on federal criminal charges, Respondent's client trust account received a wire transfer of $113,228.18, which the Ohio Supreme Court characterized as insurance proceeds received on behalf of Lay. *Id.* at ¶ 24. Respondent began writing checks drawing upon these monies. While Respondent contends that these draws were authorized by Lay or by the former vice president of operations of Lay's company, and that the expenditures were either for Lay's behalf or for legal fees, the Ohio Supreme Court found otherwise:

> Squire also failed to maintain or produce documentation of client-related expenditures. He admittedly obtained significant amounts of cash from his client trust account for the ostensible purpose of paying client expenses, but has failed to produce a single bill or receipt to substantiate his testimony that the funds were used for client purposes. Indeed, the most detailed records that he appears to have maintained or produced with regard to client expenses are the images of the canceled checks, a number of which are payable to Squire or his courier and a number of which do not even refer to a client name on the memo line. The evidence also clearly and convincingly demonstrates that Squire failed to discuss the basis or rate for legal services provided after Lay's criminal trial, which he had completed on a flat-fee basis.
> . . .
> We find that Squire also gave conflicting accounts regarding his use of the Lay funds. In a December 19, 2008 letter from Squire to Smalls, Squire stated that he had not collected any fees in the Lay representation. Contrary to that representation, Squire later informed relator that the Lay funds he had used for the benefit of himself and his other clients represented earned fees. But at the time he used the funds, he had not discussed his fee arrangement with Lay and had no records documenting the time that he had devoted or the tasks that he had performed on Lay's behalf. At his disciplinary hearing, Squire testified that he had borrowed funds from the insurance

3

> proceeds and the Lay defense fund with the knowledge and consent of Lay and Smalls.
> . . .
> Although Squire claims that his use of money from both funds was authorized, the testimony of Lay and Smalls clearly and convincingly demonstrates that his use of the insurance proceeds to pay his personal expenses and his own attorney fees was not authorized. Therefore, we conclude that respondent misappropriated funds from the $113,000 insurance proceeds by applying them dishonestly to his own use.

*Id.* at ¶¶ 36, 38, and 47.[1]

Based on its finding with regard to the Lay insurance proceeds and other violations found in Counts One and Two of the Disciplinary Counsel's amended complaint (*see id.* at ¶¶ 6-15), the Ohio Supreme Court suspended Respondent indefinitely from the practice of law. *Id.* at ¶ 71. On November 18, 2011, this Court issued an Order requiring Respondent to show cause why this Court should not impose the identical discipline that was imposed by the Ohio Supreme Court, in accordance with Rule II of the Model Federal Rules of Disciplinary Enforcement, adopted by this Court on February 1, 1979. (ECF No. 1.) Respondent timely filed a response to the show cause order in which he requested that this Court postpone any decision pending the Supreme Court of Ohio's decision on the Motion for Reconsideration that he filed there. This Court granted Respondent's request. (ECF No. 3.)

On January 18, 2012, the Supreme Court of Ohio denied Respondent's Motion for Reconsideration without opinion. (*See* ECF No. 5.) In light of the Supreme Court of Ohio's disposition of Respondent's Motion this Court renewed its Order to Show Cause. (ECF No. 6.)

---

[1]The Disciplinary Counsel also charged that Respondent misappropriated funds from the Mark D. Lay Legal Defense and Welfare Fund. The Court did not find that Respondent misappropriated funds from the Defense and Welfare Fund. *Disciplinary Counsel v. Squire*, 130 Ohio St.3d 368, 2011-Ohio-5578, 958 N.E. 2d 914, at ¶ 47. The Court therefore overruled the Disciplinary Counsel's objection as to that charge.

4

Respondent has responded to the Court's Order to Show Cause (ECF Nos. 7, 8, 9) and the matter is now ripe for this Court's decision.

## II. Discussion

Rule II of the Model Federal Rules of Disciplinary Enforcement ("Rule II") provides for the imposition of reciprocal discipline against a member of the Bar of this Court when discipline has been imposed by another court. Rule II(D) provides:

> [T]his Court shall impose the identical discipline unless the respondent-attorney demonstrates, or this Court finds, that upon the face of the record upon which the discipline in another jurisdiction is predicated it clearly appears:
>
> 1. That the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> 2. That there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> 3. That the imposition of the same discipline by this Court would result in grave injustice; or
>
> 4. That the misconduct established is deemed by this Court to warrant substantially different discipline.

Rule II(D)(1) to (4).[2]

Respondent opposes this Court's imposition of "identical discipline" based on three of these grounds. First, Respondent argues that identical discipline is unwarranted because "grave injustice would result and the state proceeding was so lacking in due process as to constitute the deprivation of a fair hearing." (Response to Order to Show Cause, ECF No. 7, at 1.)

---

[2]The Model Rules of Disciplinary Enforcement, adopted by this Court in 1979, are publicly available as an appendix to the Court's Local Civil and Criminal Rules. *See* http://www.ohsd.uscourts.gov/localrules.htm.

5

Respondent argues that there was a due process infirmity because Disciplinary Counsel Coughlan (and his office) should have been disqualified from prosecuting the disciplinary case against him due to Coughlan's conflict of interest and misconduct. (*See* ECF No. 7, at 5.) Respondent also argues that the Ohio Supreme Court's failure to rule expressly on his motion for disqualification deprived him of due process. (*See id.* at 1, 5.) Finally, Respondent contends that the Ohio Supreme Court should not have excluded an unsworn declaration of Mr. Lay from the record. (*Id.* at 2.)

Second, in separate "supplemental" responses to this Court's show-cause order, Respondent attacks the factual bases underlying the Ohio Supreme Court's decision, presumably invoking Rule II(D)(2) as a reason for this Court not to impose identical discipline. Respondent argues that the court's finding that he misappropriated client funds is "totally baseless" and should not be accorded deference. (ECF No. 8, at 1.) Respondent supports his position with voluminous exhibits that he claims to show an accounting of all relevant funds and "all relevant legal bills." (*Id.*) Respondent also submitted a "supplemental affidavit" from his former client, Mr. Lay, in an effort to demonstrate that he did not misappropriate funds belonging to Mr. Lay. (ECF No. 9.)

Weaving all of his arguments together, Respondent contends that the "grossly erroneous misappropriation finding," coupled with the due process infirmities associated with the Disciplinary Counsel's "conflict of interest" in the case, constitute the reasons why this Court should not impose reciprocal discipline. (*Id.* at 2.)

### A.    This Court Cannot "Vacate" The Discipline Imposed By The Supreme Court of Ohio.

As an initial matter, it is necessary to clarify the scope of this Court's disciplinary authority. As noted above, the Court ordered Respondent to show cause why this Court should not impose the identical discipline imposed upon him by the Supreme Court of Ohio. (*See* ECF Nos. 1, 6.) In other words, the issue here is whether this Court should indefinitely suspend Respondent from the Bar of this Court.

In his response to the Order to Show Cause, Respondent opposes reciprocal discipline. But in addition to simply arguing that he should not be suspended from practicing in this Court, Respondent also asks the Court to "reconsider" the Ohio Supreme Court's ruling. Specifically, Respondent argues that an "appropriate remedy" is to "vacate or reduce Respondent's indefinite suspension" because of the alleged misconduct of the Ohio Disciplinary Counsel during Respondent's disciplinary proceedings. (ECF No. 7, at 19.) This Court can do no such thing.

The disciplinary proceedings in federal court are limited to deciding whether Respondent will be allowed to practice law in *this* Court. As the Sixth Circuit has held, the *Rooker-Feldman* doctrine precludes a federal court from reviewing claims that directly challenge the discipline order of the Supreme Court of Ohio. *See In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). The *Rooker-Feldman* doctrine teaches that a federal district court cannot engage in appellate review of state judicial proceedings. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). Thus, to the extent that Respondent is asking this Court to invalidate the Ohio Supreme Court's disciplinary decision, Respondent is seeking such relief in the wrong forum. *See id.* (noting that an attorney's proper forum for challenging a state

7

supreme court's disciplinary decision is through a direct appeal to the Supreme Court of the United States).

> B. **Due Process**

Though this Court is not empowered to directly review challenges to state disciplinary proceedings (even if constitutional infirmities are alleged), the Court must examine alleged defects in the state proceedings when deciding whether it will impose reciprocal discipline under Rule II. *See Cook*, 551 F.3d at 548-49. In reciprocal discipline cases alleging due process violations, the Sixth Circuit has found that due process requirements are met when the attorney attended, participated actively in the hearings, and was afforded an opportunity to present evidence, testify, cross-examine witnesses, and present argument. *In re Squire*, 617 F.3d 461, 467 (6th Cir. 2010). Due process requirements are also satisfied where a respondent is given the opportunity to respond to the allegations set forth in the complaint, testify at length in his own defense, present witnesses and evidence, and make objections to the hearing panel's findings and recommendations. *Id.*; *In re Cook*, 551 F.3d at 550.

As far as due process is concerned, Respondent does not dispute that he received adequate notice of the disciplinary charges brought against him. He does contend, however, that he was not afforded an adequate opportunity to be heard (1) on his motion to disqualify Mr. Coughlan, the Ohio Disciplinary Counsel, and (2) with respect to Mr. Lay's unsworn declaration that was excluded as evidence in the record. Respondent also argues that he was denied due process by virtue of Coughlan's participation in proceedings from which he should have been disqualified.

      *1.     Ohio Supreme Court's "Fair Appellate Review" of Respondent's Motion to Disqualify Ohio Disciplinary Counsel Coughlan*

Before the hearing panel of the Board of Commissioners on Grievances and Discipline, Respondent moved to disqualify Coughlan based on allegations of conflict of interest, vindictiveness, and selective prosecution related to the disciplinary matter against him. Respondent's theory is that Coughlan launched an all-out assault on Respondent's livelihood because of the charges made by Respondent against Coughlan's office during Respondent's representation of Carole Squire in the disciplinary case Coughlan pursued against her. Respondent charged that Coughlan refused to disclose the names of everyone with whom he communicated about Mrs. Squire's disciplinary case because there was in his office a "strategy to conceal" information of a conspiracy to "smear" his wife publicly.  (*See* Response to Order to Show Cause, Ex. B, ECF No. 7-3.)

The panel denied Respondent's motion to disqualify.  Respondent claims he was not afforded "fair appellate review" of the panel's denial of his motion, noting that the Ohio Supreme Court disposed of his "appeal" only in a footnote of its opinion, in which the court stated merely that Respondent's motion was "in the record."[3]  (ECF No. 7. at 19-20.) Respondent argues that due process required more.  (*Id.*)

This Court does not find a due process deprivation.  Though Respondent assumes that he

---

[3]The Ohio Supreme Court made this statement in the context of ruling upon the Ohio Disciplinary Counsel's motion to strike certain exhibits that Respondent attached to his "Answer Brief" in the supreme court.  The Disciplinary Counsel had sought to strike the exhibits as never having been admitted as evidence in the panel hearing. *Disciplinary Counsel v. Squire*, 130 Ohio St. 3d 368, 2011-Ohio-5578, 958 N.E. 2d 914, at ¶¶ 45a-45c.  The court noted that "Exhibit A" (which was Respondent's motion to disqualify that he brought before the disciplinary panel) was "already in the record." *Id.* at ¶ 45c.

validly appealed from the disciplinary panel's denial of his motion to disqualify Coughlan, this underlying premise appears doubtful. The Ohio Supreme Court's rules governing disciplinary proceedings call for the parties to file any objections to the findings or recommendations of the Board within 20 days of the Board's final report, accompanied by a brief in support of those objections. *See* Ohio Gov. Bar. R. V, § 8(B). In this case, however, the Respondent did not file objections to the Board's final report; only the Disciplinary Counsel did. Respondent raised his purported "appeal" of the disciplinary panel's denial of his motion to disqualify Coughlan only in his answer brief responding to the Disciplinary Counsel's objections. This does not appear to be a valid means of preserving the issue for review before the Ohio Supreme Court.

If Respondent wanted to preserve his right to "appeal" the disciplinary panel's and Board's refusal to disqualify Coughlan, Respondent should have filed objections under the process provided in Ohio Gov. Bar R. V, § 8. Having not done so, Respondent cannot persuasively claim that the Ohio Supreme Court denied him due process by not providing "appellate review" of the issue. Rather than being denied due process, it appears that Respondent failed to avail himself of procedures that were available to him.

### 2. *Failure to Disqualify Ohio Disciplinary Counsel Coughlan*

Apart from the "fair appellate review" issue, Respondent also argues generally that the failure to disqualify Coughlan rendered the disciplinary proceeding against him so defective as to deny him due process. Respondent cites two main reasons why Coughlan should have been disqualified: he cites (1) the fact that Respondent represented Mrs. Squire in disciplinary proceedings brought by Coughlan, proceedings in which Respondent accused Coughlan's office of misconduct and (2) Coughlan's "misconduct" in contacting Respondent's clients and eliciting

10

information protected by the attorney-client privilege.  (*See* ECF No. 7, at 1-2.)  Neither theory leads this Court to conclude that Respondent has been denied due process.

As to both grounds, Respondent is asking this Court to find a due process infirmity when he did not avail himself of procedures within the Ohio Supreme Court where he could have adequately raised and preserved these arguments.  As noted above, Respondent did not adequately preserve for "appeal" his arguments regarding Coughlan's alleged "vindictiveness, conflict of interest, and overzealousness."  By not invoking the correct procedure to challenge the denial of his motion to disqualify Coughlan on these grounds, Respondent cannot complain of a procedural due process violation in the Ohio Supreme Court's treatment of the issue.  The Court will not find a due process infirmity under such circumstances.

For similar reasons, this Court also rejects the Respondent's disqualification arguments based on Coughlan's alleged "misconduct."  Respondent contends that Coughlan committed misconduct in his pursuit of deposition testimony from Respondent's former client, Mr. Lay, without Respondent being present.  Respondent could not be physically present for Mr. Lay's deposition, which took place at a federal correctional facility in Ft. Dix, New Jersey, and the facility would not (or could not) accommodate Respondent's desire to participate by telephone. (ECF No. 7, at 10.)  Respondent contends that Coughlan violated the Ohio Rules of Professional Conduct by going forward with the deposition without Respondent being present.  In doing so, Respondent argues that Coughlan in effect violated ethical rules by contacting a represented party (*i.e.*, Mr. Lay) without his counsel present (*i.e.*, Respondent) and further proceeding "improperly to interrogate" Mr. Lay about "privileged communications" without receiving a waiver of Lay's attorney-client privilege or even advising Lay about the privilege.  (*See* ECF No.

7, at 6-14.)  This discovery abuse, argues Respondent, was "overzealousness and misconduct" that denied him a fair hearing.  (*Id.* at 14.)

The problem with Respondent's "due process" argument related to Coughlan's purported "misconduct" is that he did not raise it before the Ohio Supreme Court.  Respondent sought Coughlan's disqualification from the proceedings before the disciplinary panel based only on his allegations of "conflict of interest," "overzealousness," and "vindictiveness" that Respondent contends arise from Respondent's representation of his wife in her disciplinary proceeding.  (*See* Response to Order to Show Cause, Ex. B, ECF No. 7-3.)  Respondent did not identify Respondent's purported "misconduct" in discovery as a basis for disqualification.  Nor did Respondent raise that issue before the Ohio Supreme Court during the proceedings there.  This Court strains to find a due process infirmity when Respondent did not even avail himself of the process available to him in the state disciplinary proceedings to raise this issue.

Based on the record brought before it in this proceeding, the Court is highly skeptical with regard to the merits of Respondent's claim that Coughlan should have been disqualified from the disciplinary proceedings against Respondent as a matter of due process.  But the Court need not even delve into the merits of the disqualification claim in order to resolve the matter before it.  In light of the Respondent's failure to invoke and exhaust the procedures available to him for seeking Coughlan's disqualification from the disciplinary proceedings, the Court is unable to find "upon the face of the record" that Respondent was denied due process.

### 3. *Mark Lay's Unsworn Declaration*

Respondent also raises a due process issue arising from evidence excluded during the proceedings before the disciplinary panel and the Ohio Supreme Court.  In order to rebut the

Disciplinary Counsel's use of Mr. Lay's deposition testimony, which Respondent argues to have created "inappropriate inferences" (ECF No. 7, at 15), Respondent attempted to offer the unsworn Declaration of Mr. Lay under 28 U.S.C. § 1746.[4] In that Declaration, Mr. Lay states that the $113,328.18 that the Ohio Supreme Court found Respondent to have misappropriated from Mr. Lay were not actually Lay's funds, but, rather, funds belonging to MDL Capital (Lay's former company). (*See* Lay Decl., ECF No. 7-18, at ¶¶ 23-29.) Lay's Declaration also states that Respondent had "exclusive control" of these funds and that it was "entirely up to Mr.

---

[4]28 U.S.C. § 1746 provides:
> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
>   (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
> (Signature)".
>
>   (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

13

Squire" how those funds were expended. (*Id.* at ¶ 29.)[5]

The disciplinary panel did not consider the Lay Declaration and the Ohio Supreme Court did not allow Respondent to introduce it as additional evidence in the proceedings before it. *See Disciplinary Counsel v. Squire*, 130 Ohio St.3d 368, 2011-Ohio-5578, 958 N.E. 2d 914, at ¶ 45c. Because Ohio law does not permit unsworn declarations in lieu of a sworn affidavit, the court granted the Disciplinary Counsel's motion to strike the Lay Declaration from the record. (*Id.*)

This Court does not find that the exclusion of the Lay Declaration rendered the disciplinary proceedings lacking in due process. The Supreme Court of Ohio was not bound to admit the unsworn declaration pursuant to 28 U.S.C. § 1746; that statute applies only to proceedings in *federal* court. *See Toledo Bar Assn. v. Neller*, 102 Ohio St. 3d 1234, at ¶¶ 19-21. Ohio has never recognized that an unsworn declaration can be substituted for a validly sworn affidavit. *Id.* at ¶ 22. Principles of due process did not entitle Respondent to offer evidence in a state proceeding that was not allowed by state law.

The Court finds no due process infirmity in the state disciplinary proceedings that should preclude this Court's imposition of reciprocal discipline.

### C. Proof of Misconduct

Respondent also opposes this Court's imposition of reciprocal discipline by attacking the factual basis of the Ohio Supreme Court's disciplinary decision. In a Supplemental Response to

---

[5] Mr. Lay's Declaration also contains statements to rebut the Disciplinary Counsel's allegation that Respondent misappropriated funds from the Legal Defense and Welfare Fund that was established on Lay's behalf. (*See* Lay Decl., ECF No. 7-18, at ¶¶ 18-21.) The disciplinary panel did *not* find that Respondent misappropriated funds from the Legal Defense and Welfare Fund, a finding that the Ohio Supreme Court upheld. *See Disciplinary Counsel v. Squire*, 130 Ohio St. 3d 368, 2011-Ohio-5578, 958 N.E. 2d 914, at ¶ 47.

this Court's Order to Show Cause, Respondent calls "totally baseless" the Ohio Supreme Court's determination that he misappropriated client funds. (ECF No. 8, at 1.) In support of his contention, Respondent attaches to his Supplemental Response documents he calls a "complete accounting of all disbursements" and copies "of all relevant legal bills." In a "Supplemental Affidavit," Respondent also submits an affidavit from Mr. Lay, which Respondent offers to "ratify his previously tendered declaration." (ECF No. 9.)[6] Respondent also attaches to Lay's Affidavit documents that purportedly rebut the Ohio Supreme Court's finding that Respondent received certain funds without Lay's knowledge and used them for his own benefit. (*Id.*)

The Court is not persuaded that there was an "infirmity of proof" in the state disciplinary proceedings that should preclude identical discipline under Rule II. The Ohio Supreme Court cited ample evidence to support the conclusion that Respondent committed misconduct with respect to the misappropriation of funds. This Court is cognizant of the fact that Respondent vigorously disputes the characterization of the evidence by the Ohio Supreme Court and that he has submitted evidentiary materials in this Court (in particular, the Lay Affidavit and the Lay Declaration that the Ohio Supreme Court excluded) that tend to support Respondent's defense against the charges levied against him by the Disciplinary Counsel. But these materials and Respondent's arguments do not convince the Court that there is an "infirmity of proof establishing the misconduct" so as to justify departure from reciprocal discipline under Rule II(D)(2). The Court notes that the materials submitted by Respondent, which purport to show an

---

[6]Ironically, Respondent has submitted in affidavit in federal court when an unsworn declaration under 28 U.S.C. § 1746 would be acceptable; yet, in the state proceedings, where 28 U.S.C. § 1746 is inapplicable, Respondent submitted an unsworn declaration when an affidavit was required.

"accounting" of the disbursements made of the funds alleged to be misappropriated, leave it unclear, at best, which expenditures from Respondent's trust account were on behalf of Respondent's client, which were attributable to valid legal fees, and which were expenditures authorized by Respondent's client. This uncertainty in the documentation, coupled with the evidence cited by the Ohio Supreme Court in its opinion, does not leave the Court with the clear conviction that the proof of Respondent's misconduct was lacking.[7] Nor can the Court say that a "grave injustice" would be done if the Court were to impose identical discipline.

### III. Order

In light of the foregoing, **IT IS THEREFORE ORDERED** that Respondent be suspended indefinitely from the practice of law in this Court pursuant to Rule II(E) of the Model Federal Rules of Disciplinary Enforcement adopted by this Court on February 1, 1979. Respondent is hereby ordered to cease and desist from the practice of law in any form and is forbidden to appear on behalf of another before this Court.

**IT IS FURTHER ORDERED** that Respondent shall not be reinstated to the practice of law in this Court until (1) the Supreme Court of Ohio orders Respondent reinstated to the practice of law in Ohio and (2) this Court grants reinstatement pursuant to a petition for reinstatement filed by Respondent under Rule VII of the Model Federal Rules of Disciplinary Enforcement.

---

[7]The Court also notes that the copies "of all relevant legal bills" offered by Respondent as "evidence" to show that all expenditures were accounted for are dubious. (*See* ECF No. 8-3.) There is no indication that these bills were placed before the disciplinary panel or the Ohio Supreme Court as evidence. Indeed, if anything, these "legal bills" appear to be an after-the-fact attempt to document legal work purportedly done by Respondent on Mr. Lay's behalf. Each "invoice" submitted to the Court is dated November 3, 2011, which, coincidentally, is the date that the Ohio Supreme Court rendered its decision in Respondent's disciplinary case.

**IT IS FURTHER ORDERED** that Respondent is forbidden to counsel or advise, or prepare legal instruments for others or in any manner perform services of any kind for others that would constitute the practice of law in this Court.  Respondent is also forbidden to hold himself out to another or to the public as being authorized to perform legal services, and he is hereby divested of all of the rights, privileges, and prerogatives customarily accorded to a member in good standing of the Bar of this Court.

**IT IS FURTHER ORDERED** that Respondent surrender his certificate of admission to practice in this Court to the Clerk of Court forthwith and that Respondent's name be stricken from the roll of attorneys maintained by this Court.

**IT IS FURTHER ORDERED** that within 30 days from the date of filing of this Order, Respondent shall:

1.  Notify all clients being represented in pending matters in this Court and any co-counsel of his suspension and his consequent disqualification to act as an attorney as of the effective date of this Order, and, in the absence of co-counsel, also notify clients to seek legal services elsewhere, calling attention to any urgency in seeking the substitution of another attorney in his place;

2.  Regardless of any fees or expenses due Respondent, deliver to all clients being represented in pending matters in this Court any papers or other property pertaining to the clients, or notify the clients or co-counsel, if any, of a suitable time and place where the papers or other property may be obtained, calling attention to any urgency for obtaining such papers or other property;

3.  Regarding any actions pending in this Court, refund any part of any fees or expenses

paid in advance that are unearned or not paid, and account for any trust money or property in Respondent's possession or control;

4. Notify opposing counsel in pending litigation in this Court or, in the absence of counsel, the adverse parties, of his disqualification to act as an attorney as of the effective date of this Order;

5. Transmit by certified mail all notices required by this Order, with all notices containing a return address where communications may be directed to Respondent;

6. File with the Clerk of this Court an affidavit showing compliance with this Order and Proof of Service of Notices required herein, with such affidavit setting forth the address where Respondent may receive communications;

7. Keep the Clerk of this Court advised of any change of Respondent's address; and

8. Retain and maintain a record of the various steps taken by Respondent pursuant to this Order.

**IT IS FURTHER ORDERED** that the Clerk of this Court shall publish this Order to this Court's official website and issue certified copies of this Order to the Disciplinary Counsel of the Supreme Court of Ohio, to the Clerks of the Supreme Court of the United States and the United States Court of Appeals for the Sixth Circuit, to its Divisional Offices, and to the National Discipline Data Bank.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**